UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH W. FARMER,                      :
                                       :CIVIL ACTION NO. 3:12-CV-808
            Plaintiff,                 :
                                       :(JUDGE RICHARD P. CONABOY)
            v.                         :(Magistrate Judge Carlson)
                                       :
MICHAEL POTTEIGER, et al.,             :
                                       :
            Defendants.                :
                                       :

**FILED**
**SCRANTON**

SEP 2 7 2013

PER_____
DEPUTY CLERK

## MEMORANDUM

Here we consider the Report and Recommendation of Magistrate
Judge Martin C. Carlson concerning Plaintiff Joseph W. Farmer's 42
U.S.C. § 1983 action.  (Doc. 56.)  Magistrate Judge Carlson
recommends granting Defendants' Motion to Dismiss Amended Complaint
(Doc. 42) and closing this case.  (Doc. 56 at 21.)  Plaintiff filed
Objections to Magistrate Judge's Report & Recommendation (Doc. 57)
on August 6, 2013.  Defendants filed a responsive brief on August
14, 2013.  (Doc. 58.)  Plaintiff filed a reply brief on August 27,
2013.  (Doc. 59.)  Therefore, this matter is fully briefed and ripe
for disposition.  For the reasons discussed below, we adopt the
Magistrate Judge's Report and Recommendation (Doc. 56) as modified,
grant Defendants' Motion to Dismiss Amended Complaint(Doc. 42),
dismiss all claims in Plaintiff's Amended Complaint (Doc. 38) with
prejudice, and close this case.

## I. Background

By way of general background, the Report and Recommendation
sets out the following summary.

"On December 11, 1981, Joseph W. Farmer, ..., was arrested and charged with Aggravated Assault, Unlawful Restraint, and Rape, of a co-worker on the evening of December 10, 1981. A jury found Mr. Farmer guilty of these offenses on May 10, 1982, and on January 24, 1983, he was sentenced to an aggregate term of 13½ to 32 years imprisonment." *Farmer v. DiGuglielmo*, No. 05-6383, 2007 WL 1276948, *1 (E.D. Pa. May 1, 2007). Since his incarceration, Farmer has been reviewed and denied parole on at least two occasions by the Pennsylvania Board of Probation and Parole ("Board"), once in 1995 and again in 2008. In June of 1995, the Board first denied Farmer's application for parole, observing that Farmer showed "very high assaultive behavior potential," that he needed counseling, and that he had failed to benefit from a treatment program for convicted sex offenders. (Compl., Ex. 14.) The Board informed Farmer that before his next parole review, [h]e would need to participate in sex offender treatment and other prescribed programming, maintain a clear conduct record, and earn an institutional recommendation for parole. (*Id.*)

On April 9, 2008, the Board again denied Farmer's application for parole, giving as reasons for the denial the fact that Farmer continued to deny the nature and circumstances of the crimes he was convicted of committing; he refused to accept responsibility for those offenses; and he demonstrated continued need to participate in and complete additional institutional programs.

(Doc. 56 at 2-3.)

Plaintiff filed this action on May 1, 2012. (Doc. 1.) In response to Defendants' earlier motions to dismiss (Docs. 13, 31), the Court granted the motions in part, allowing Plaintiff leave to

2

amend his claims relating to allegedly improper program assignments and alleged revocation of parole eligibility. (Doc. 37 at 2.) Plaintiff filed his Amended Complaint on November 20, 2012. (Doc. 38.) He asserts the following violations of his constitutional rights related to improper program assignments and revocation of parole eligibility:

> 1. mandate requiring the plaintiff to participate /complete in two retroactive involuntary PDOC's "admitters" sexual offender treatment programs ("SOTP"), to be eligible for parole (Exs. 21, 22, 24); 2. repeal of his parole eligibility for refusing to participate in the involuntary SOTP (Ex. 24); 3. the involuntary SOTP is a minimum sentence driven program (Ex. 15); 4. forcing the plaintiff to take an involuntary SOTP (Exs. 10, 14, 16); 5. mandating the plaintiff to take an involuntary SOTP, after taking a voluntary SOTP (Exs. 10, 14, 16); 6. aspects of the involuntary SOTP, have the same components as § 9718.1; 7. PDOC's Sex Offender Treatment Policy 13.8.1 § 11, administers their SOTP in accordance with § 9718.1; 8. failed to acknowledge/list the plaintiff's completed PDOC's programs (Exs. 10, 11); 9. adhering to their mission statements as it pertains to the improper program assignments (Ex. 9); 10. Parole Guidelines expresses eligibility for parole, incorporates recidivism factor, which is also embodied in the SOAB's assessment, and showing that the plaintiff was disadvantaged by the change in the law (Exs. 6, 7, 8); 11. statistical evidence related to th second prong of the ex post facto clause; 12. violent offender (plaintiff) held to a more rigorous criteria of review for parole eligibility and program assignments (Exs. 19, 23); 13. being knowledgable about the unconstitutional violations through the plaintiff's grievances (Exs. 20, 21, 22, 24); 14. the SOAB's assessment, under § 9795.4;

3

and 15. the unconstitutional violations did
                    not exist at the time of plaintiff's
                    conviction (Exs. 1, 2, 3, 24).

(Doc. 38 at 6-7.)   Plaintiff seeks declaratory and injunctive

relief which includes requiring Defendants to use the procedures

and policies in place at the time of his conviction, reinstatement

of his parole eligibility, providing him a parole hearing, and

declaring that Plaintiff does not have to participate in or

complete two retroactive mandated involuntary "admitters" sex

offender programs.   (Doc. 38 at 18-19.)

        Plaintiff filed another 42 U.S.C. § 1983 action in this Court

in 2009--*Farmer v. McVey*, Civil Action No. 4:09-CV-166. In that

litigation, Plaintiff brought claims against members of the

Pennsylvania Board of Probation and Parole, members of the

Pennsylvania Commission on Crime and Delinquency, Pennsylvania

Department of Corrections personnel, and Office of Victim Advocate

personnel.   (Civil Action No. 4:09-CV-166 Am. Compl., Doc. 21 at 2-

4.)   The declaratory and injunctive relief sought included ordering

Defendants to grant Plaintiff a parole hearing using the procedures

and policies in place at the time of his sentencing.   (*Id.* at 18.)

Plaintiff alleged Ex Post Facto Clause and Due Process Clause

violations based on the improper application of Parole Act

amendments and VOI/TIS requirements.   (*Id.*)   This Court's dismissal

of Plaintiff's action was affirmed by the Court of Appeals for the

Third Circuit with its opinion of October 19, 2011.   *Farmer v.*

*McVey*, 448 F. App'x 178 (3d Cir. 2011).

In the pending Report and Recommendation, Magistrate Judge Carlson concludes Defendants' Motion to Dismiss Amended Complaint (Doc. 42) should be granted for the following reasons: Plaintiff's claims have previously been litigated and adjudicated and are barred by the doctrines of collateral estoppel and res judicata (Doc. 56 at 10-13); all claims against current and former Parole Board and Department of Corrections officials in their official capacities are barred by the Eleventh Amendment (*id.* at 14); and Plaintiff's Amended Complaint fails to state a claim for violations of the Due Process and Ex Post Facto Clauses (*id.* at 15-21).

As noted above, Plaintiff filed objections to the Report and Recommendation (Doc. 57) and Defendants filed a response to the objections (Doc. 58). With Plaintiff's reply brief (Doc. 59) filed on August 27, 2013, this matter became ripe for disposition.

## II. Discussion

### A. *Legal Standards*

### 1. Standard of Review

When a plaintiff files objections to a magistrate judge's report, the reviewing court conducts a *de novo* review of those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1). To warrant *de novo* review, the objections must be both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). The court may accept, reject or modify, in whole or in

5

part, the findings made by the magistrate judge.  28 U.S.C. §
636(b)(1).  Uncontested portions of the report are reviewed for
clear error.  *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa.
1998).

## 2.   **Motion to Dismiss Standard**

When reviewing a complaint pursuant to a defendant's motion to
dismiss for failure to state a claim filed under Federal Rule of
Civil Procedure 12(b)(6), the court does so in the context of the
requirement of Federal Rule of Civil Procedure 8(a)(2) which
requires only "a short and plain statement of the claims showing
that the pleader is entitled to relief."  The "short and plain
statement" must be sufficient to "give the defendant fair notice of
what the plaintiff's claim is and the grounds upon which it rests."
*Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other
grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007).

*Twombly* confirmed that more is required than "labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do."  550 U.S. at 555 (citing *Papasan v. Allain*,
478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not
bound to accept as true a legal conclusion couched as a factual
allegation")).  "Factual allegations must be enough to raise a
right to relief above the speculative level on the assumption that
all allegations in the complaint are true (even if doubtful in
fact)."  550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

*McTernan,* 577 F.3d at 530. *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

McTernan discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.] Second, a District Court must then determine whether the facts

7

> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950. In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief. A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )]. As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949. This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

The Third Circuit Court of Appeals considered what evidence a trial court may properly consider when ruling on a motion to dismiss in *Pryor v. National Collegiate Athletic Association*, 288 F.3d 548 (3d Cir. 2002). Generally, a court may consider evidence outside the complaint. *Id.* at 559 (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Exhibits attached to a complaint

may be considered. *Id.* at 560 (citation omitted). Further, documents not attached to the complaint but whose contents are alleged in the complaint and whose authenticity no party questions may be considered. *Id.* Similarly, documents attached to the defendant's motion may be considered if they are referred to in the plaintiff's complaint and are central to the claim. *Id.* The court may consider matters of public record in determining whether dismissal is appropriate. *Sands v. McCormick*, 503 F.3d 263, 268 (3d Cir. 2007). Finally a court may consider legal arguments presented in the parties' briefs and arguments of counsel. 288 F.3d at 560.

The district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.    *Plaintiff's Objections***

Plaintiff presents four main objections to Magistrate Judge Carlson's Report and Recommendation.[1]  (Doc. 57 at 5-14.) Plaintiff first asserts the Magistrate Judge erred in finding that Plaintiff's claims were previously litigated and adjudicated. (Doc. 57 at 5-8.)  Plaintiff argues that his current claims are not

---

[1] Plaintiff's assertions regarding the management of this litigation (Doc. 57 at 14-15) are not considered objections to the Report and Recommendation. Further, we find Plaintiff's assertions of mismanagement without merit.

barred because they are not based on the denial of parole previously litigated but rather on improper program assignments and revocation of his parole eligibility. (*Id.*) Second, Plaintiff objects to the Magistrate Judge's finding that claims against current and former Parole Board and Department of Corrections officials in their official capacities are barred by the Eleventh Amendment, arguing that immunity does not apply to claims for prospective injunctive relief. (*Id.* at 14.) Third, Plaintiff objects to the finding that he fails to state a claim under the Ex Post Facto Clause. (*Id.* at 10-13.) Fourth, Plaintiff objects to the finding that his due process rights were not violated. (*Id.* at 13-14.)

## 1. **Preclusion**

Plaintiff maintains that his claims are not barred by the doctrines of issue or claim preclusion because he now raises claims related to program assignments and the revocation of parole eligibility and he previously raised claims based on the denial of parole. (Doc. 57 at 6.) We conclude preclusion principles apply to this case and bar Plaintiff's current claims.

The United States Supreme Court explained the preclusive effect of a judgment in *Taylor v. Sturgell*, 553 U.S. 880 (2008).

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same

claim, whether or not relitigation of the
claim raises the same issues as the earlier
suit." *New Hampshire v. Maine*, 532 U.S. 742,
748, 121 S. Ct. 1808, 149 L. Ed. 968 (2001).
Issue preclusion, in contrast, bars
"successive litigation of an issue of fact or
law actually litigated and resolved in a
valid court determination essential to the
prior judgment," even if the issue recurs in
the context of a different claim. *Id.*, at
748-749, 121 S. Ct. 1808. By "preclud[ing]
parties from contesting matters that they
have had a full and fair opportunity to
litigate," these two doctrines protect
against "the expense and vexation attending
multiple lawsuits, conserv[e] judicial
resources, and foste[r] reliance on judicial
action by minimizing the possibility of
inconsistent decisions." *Montana v. United
States*, 440 U.S. 147, 153-154, 99 S. Ct. 970,
59 L. Ed. 2d 210 (1979).

*Taylor*, 553 U.S. at 892.[2]

A party seeking to invoke claim preclusion "must establish
three elements: (1) a final judgment on the merits in a previous

---

[2]   The Court noted that the terms "issue preclusion" and
"claim preclusion," collectively referred to as "res judicata,"
have replaced a more confusing lexicon. *Taylor*, 553 U.S. at 892
n.5.

"Res judicata" is commonly used interchangeably with "claim
preclusion," and "collateral estoppel" is commonly used
interchangeably with "issue preclusion." *See, e.g., United States
v. 5 Unlabeled Boxes*, 572 F.3d 169, 174 (3d Cir. 2009). While
courts often acknowledge the more modern lexicon, the traditional
terms are used when it is necessary to do so to avoid confusion.
*See, e.g., Nationwide Mutual Fire Ins. Co. v. Hamilton*, 571 F.3d
299, 309 n.11 (3d Cir. 2009).

Here we will use the terms "claim preclusion" and "issue
preclusion," recognizing the Supreme Court's directive that the
overarching term for these preclusion concepts is "res judicata."
*Taylor*, 553 U.S. at 892 & n.5.

suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks and citation omitted). "'The doctrine of [claim preclusion] bars not only claims that were brought in a previous action, but also claims that could have been brought.'" *Duhaney*, 621 F.3d at 347 (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)); *see also Marmon Coal Co. v. Director, Office of Workers' Compensation*, No. 12-3388, ---F.3d---, 2013 WL 4017160, at *5 (3d Cir. Aug. 8, 2013) (citing *Duhaney*, 621 F.3d at 347)). The three-part test is not to be applied mechanically; courts should "focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (internal quotation and citations omitted).

"Although res judicata is an affirmative defense for a defendant to plead, Fed. R. Civ. P. 8(c), dismissal for failure to state a claim may be appropriate when it is obvious from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim." *Taylor v. Visinsky*, No. 12-4156, ---F. App'x---, 2013 WL 4034510, at *2 (3d Cir. Aug. 9, 2013) (citing *Jones v. Block*, 549 U.S. 199, 215 (2007)).

Plaintiff asserts that "[t]he Defendants' Attorney [] never

raised the prerequisites of res judicata [] in his legal argument."
(Doc. 57 at 7 (citing Doc. 43 at 7-10).)  In the cited document,
Defendants' Brief in Support of Motion to Dismiss Amended
Complaint, Defendants state that Plaintiff's Amended Complaint is
precluded on both claim and issue preclusion grounds (Doc. 43 at
13), but they do not address the elements of claim preclusion.
(*See* Doc. 43 at 13-16.)  Therefore, we cannot conclude that
Defendants have adequately raised claim preclusion as an
affirmative defense or basis for dismissal.  However, we conclude
that information gleaned from the face of the pleading (which
appropriately includes attached exhibits) and other court documents
is sufficient to consider the doctrine of claim preclusion sua
sponte.

Here, there is no doubt that Plaintiff filed a prior suit and
there was a final judgment on the merits in that suit.  *Farmer v.*
*McVey*, 448 F. App'x 178 (3d Cir. 2011) (affirming dismissal of
Civil Action No. 4:09-CV-166).  Therefore, we turn to the question
of whether the 2009 suit was against the same parties or their
privies as the current action.

In *Taylor*, the Court noted that "[t]he substantive legal
relationships justifying preclusion are sometimes collectively
referred to as 'privity.'"  553 U.S. at 892 n.8. (citations
omitted).  As the Third Circuit recognized in *Salerno v. Corzine*,
449 F. App'x 118, 122 (3d Cir. 2011) (not precedential), *Taylor*

also noted that "the term 'privity' is used merely as 'a way to express the conclusion that nonparty preclusion is appropriate on any ground.'" *Salerno*, 449 F. App'x at 122 (citing *Taylor*, 553 U.S. at 894 n.8.) Importantly, the fact that additional parties are added in the later action does not defeat claim preclusion--"the essence of the cause of action . . . is not altered by the addition of more parties." *Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988); *see also Sheridan*, 609 F.3d at 260 (citing *Gregory*, 843 F.2d at 119).

Many parties named in Plaintiff's Amended Complaint (Doc. 38) were also named in the Amended Complaint of his previous action (*see* 3:09-CV-166 Doc. 21 at 2-4). Of the eleven (11) Defendants not previously named, one (Defendant Potteiger) is asserted to be the Chairman of the Pennsylvania Board of Probation and Parole, and five (5) (Defendants Imboden, Massaro, Mangiano, Viglione, and Fox) are asserted to be current members of the Board. (Doc. 38 at 3.) The Chairman and Members of the Board were sued in the previous action. (*See* 3:09-CV-166 Doc. 21 at 2-4.) In the current action, Plaintiff does not allege (and no evidence suggests) that he has applied for parole since the 2008 review which was the subject of his previous action or that the Pennsylvania Board of Probation and Parole conducted any review of his case since that time. Therefore, the addition of a new Board Chairman and new Board

14

Members does not defeat claim preclusion.[3]

Turning now to the "same cause of action" element of claim preclusion, the Third Circuit Court of Appeals has often noted it has "'disavowed attempts to create a simple test for what constitutes a cause of action for res judicata purposes.'" *Marmon Coal*, 2013 WL 4017161, at *6 (internal quotation and citation omitted). The reviewing court is to "take a 'broad view' of what constitutes the same cause of action." *Sheridan*, 609 F.3d at 260 (citing *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984); Restatement (Second) of Judgments § 24(1) ("[A] claim extinguished [by the doctrine of claim preclusion] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose.")). Claim preclusion analysis, "does not depend on the specific legal theory invoked, but rather 'the essential similarity of the underlying events giving rise to the various legal claims.'" *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)). The focus of the analysis is "'whether the acts complained of were the same, whether the

---

[3] Defendants Wetzel, Varner, Josefowicz, Keller, and Blasko are the other Defendants who were not named in the 2009 action. Our review of the records in both cases does not show that their predecessors were defendants in the 2009 case. Therefore, we will separately address Plaintiff's claims against these Defendants.

material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same.'" *Elkadrawy*, 584 F.3d at 173 (quoting *Athlone*, 746 F.2d at 984). "The mere existence of common elements of fact between two claims does not establish the same cause of action if the critical acts and the necessary documentation were different for the two claims." *Marmon Coal*, 2013 WL 401760, at *6 (citing *Duhaney*, 621 F.3d at 349). "In addition, an identical sought-after remedy for each of the claims is not dispositive for purposes of determining whether the second claim involves a new cause of action." *Id*.

Here there are common elements of fact in each case. Plaintiff insists that the facts giving rise to this action are different from those in the earlier action because here his claims are not based on the 1996 parole amendments but on improper program assignments, revocation of his parole eligibility (Doc. 57 at 6), his violent offender designation, and change in the parole eligibility review period (Doc. 53 at 6). Although Plaintiff may focus on different critical acts and different necessary documentation, his claims are precluded based on the requirement "that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence," *Duhaney*, 621 F.3d at 348 (internal citations and quotations omitted). Plaintiff's attempt to distinguish his second

16

set of facts is unavailing because our review of the record leaves no doubt that the allegations which form the basis of his current claims *could have been brought* in his previous suit because they relate to the transaction or series of transactions at issue in the 2009 case. *See* Restatement (Second) of Judgments § 24); *see also Sheridan*, 609 F.3d at 261 (citing Restatement (Second) of Judgments § 24). The Court of Appeals for the Third Circuit has repeatedly emphasized the principle that claim preclusion bars such claims. *See*, *e.g.*, *Sheridan*, 609 F.3d at 261.

In his 2009 suit, Plaintiff was obligated to bring claims that related to the "'transaction . . . out of which the action arose.'" *Sheridan*, 609 F.3d at 261 (quoting Restatement (Second) of Judgments § 24(1)). The "transaction" or "series of transactions" at issue in the 2009 suit were the 2008 Parole Board's denial of parole which Plaintiff alleged resulted from the improper application of the 1996 amendments to the Parole Code. *See Farmer v. McVey*, 448 F. App'x at 180-81. As will be discussed below, Plaintiff's current claims relate to the 2008 parole decision.

First, as evidenced by Integrated Correctional Plan Annual Reviews attached to Plaintiff's Amended Complaint (for the years 2011 and 2012), the program assignments to which Plaintiff now refers were recommended on January 26, 2007. (Doc. 38 at 33, 35.) It is a fair inference that where the April 9, 2008, Pennsylvania Board of Probation and Parole's denial of parole referenced

Plaintiff's "need to participate in and complete additional institutional programs" (Doc. 1 at 59), the Board was referring to the programs recommended in 2007 (and incorporated in subsequent Institutional Correctional Plans). Thus, not only were the allegedly improper assignments made long before Plaintiff filed his 2009 suit, but any allegations regarding the program assignments' effects on his parole eligibility would have been in play for his 2008 parole review and 2009 legal action. Clearly, claims about these assignments could have been raised in his 2009 case. Further evidence of the earlier availablity of claims related to program assignments is found in the Correctional Plan attached to the Amended Complaint in the 2009 action which contains recommended programming identical to that found in the 2011 and 2012 Correctional Plans, all with the recommendation date of January 26, 2007. (Civil Action No. 3:09-CV-166, Doc. 21 at 22.) Plaintiff's counselor at that time was also Richard Keller. (*Id.*)

In sum, Plaintiff's claims related to allegedly improper program assignments could have been raised in his 2009 action, and they should have been raised as they were part of the transaction at issue--the 2008 parole decision. Therefore, they are currently barred under the doctrine of claim preclusion.

Regarding Plaintiff's related assertion that his parole eligibility has been repealed since his 2009 action (Doc. 38 at 11), his reliance on language contained in the February 9, 2012,

18

Final Appeal Decision on his December 5, 2011, grievance (Doc. 1 at
66) is misplaced. In her decision, Grievance Officer Dorina Varner
stated that Plaintiff's participation in the Sex Offender Program
Aftercare and Sex Offender Moderate-High Intensity programs were
assigned to Plaintiff by the Sex Offender Treatment Board and that
his "participation and successful completion of the programs is a
condition of whether or not you will be considered for parole."
(Doc. 38 at 47.)  Varner adds that it is Plaintiff's choice,
"[h]owever, in order to be eligible for parole, you must properly
complete programs that will aid into your reintegration into
society."  (*Id.*)  In his December 5, 2011, Official Inmate
Grievance, Plaintiff states that in his recent Annual Review his
Integrated Correctional Plan listed two "admitter" sex offender
therapy programs.  (Doc. 1 at 66.)  He asserts that "[t]he PDDC and
PBPP continue to classify me as a violent offender . . . thus
requiring my participation/completion of the aforementioned
'admitter' therapy programs."  (*Id.* (emphasis added).)  Plaintiff
adds that he "can not receive a favorable review for a parole
review/hearing from the PDDC [if he does not participate] . . .
[t]hus, preventing me from qualifying for parole."  (*Id.*)  The
Integrated Correctional Plan included in the grievance exhibit
contains the same program requirements as those reviewed earlier.
(*Id.*)

     We conclude that any language regarding "eligibility" for

parole related to completion of programming does not give rise to a new set of facts which defeats claim preclusion. In the 2008 denial of parole, the Board, after citing Plaintiff's need to complete additional institutional programming as a reason for denial, stated the following: "You will serve your unexpired maximum sentence 12/16/2013, or to be reviewed earlier, if recommended by Department of Corrections/County Prison Staff due to appropriate adjustment and *program completion*." (Doc. 1 at 59 (emphasis added).) This review of relevant documents indicates that it was the Parole Board's decision in 2008 that linked Plaintiff's being paroled before his maximum sentence to the completion of additional institutional programs which at the time had been identified as the "admitter" programs he complains of now. Thus, any complaint about the "repeal" of his parole eligibility clearly could have been raised in Plaintiff's 2009 action for preclusion purposes as it relates to the transaction at issue--the 2008 parole denial.[4] To the extent Plaintiff did not raise it as a

---

[4] With this conclusion we do not affirm Plaintiff's assertion that his eligibility for parole has been repealed. The April 9, 2008, Notice of Board Decision specifically states: "you may file an application for parole/reparole no sooner that 1 year after the date the last decision denying parole/reparole was recorded." (Doc. 1 at 59.)

We further note that the Court of Appeals for the Third Circuit, in reviewing Plaintiff's 2009 Ex Post Facto Clause and Due Process Clause claims related to the 2008 parole decision, identified the need to participate in additional institutional programs as a reason for the Board's denial of parole. 448 F. App'x at 179. The Circuit Court concluded that both the Ex Post

distinct claim in his 2009 action, he is now barred from doing so under the doctrine of claim preclusion.

Plaintiff's contention that his violent offender classification is a distinct claim from that raised previously (Doc. 53 at 6) does not defeat claim preclusion. Plaintiff states that the issues accrued after the filing of his amended complaint in the 2009 case. (*Id.*) He states the designation comes from the PBPP's Pamphlet dated May 2011 and the criteria stated in a newspaper article attached as an exhibit to his amended complaint. (*Id.* (citing Amended Complaint Exs. 17, 19, 23).) A review of these exhibits shows that the first, Exhibit 17, appears to be the cover of a Board of Probation and Parole information publication which makes no mention of violent offender status or designation. (Doc. 38 at 36.) The second, Exhibit 19, shows two charts, one identifying the rates parole was granted to violent offenders with completed programming for the years 2008 through 2011, and the second identifying the rate for violent sex offenders with completed programming for the same years.[5] (Doc. 38 at 38.) Again, there is no mention of changed violent offender status or designation. The third, Exhibit 23, is a Times Leader article

---

Facto Clause and Due Process Clause claims were properly dismissed by the District Court. *Id.* at 180-81.

[5] Both charts show that parole was granted for both groups at a higher rate almost every year. (Doc. 38 at 38.)

21

titled "Guards question prison savings." (Doc. 38 at 46.) Our review of the article shows no reference to a change in violent offender status or designation. On the contrary, Michael Potteiger, Chairman of the Board of Probation and Parole, was quoted as saying "[w]e're not changing any criteria for a person to be paroled." (Doc. 38 at 46.)

Other evidence undermines the alleged *change* in designation. For example, in Plaintiff's December 5, 2011, grievance, he states "[t]he PDDC and PBPP *continue* to classify me as a violent offender . . . thus requiring my participation/completion of the aforementioned 'admitter' therapy programs." (Doc. 1 at 66 (emphasis added).) As reviewed above, Plaintiff links this classification to his programming requirements--programming recommendations set in place in January 2007 and acknowledged in the Parole Board's 2008 decision. Thus, any violent offender status claims could have been raised in 2009. To the extent they were not, they are now barred by the doctrine of claim preclusion.

Because the record shows the claims Plaintiff characterizes as new are claims that *could have been brought* in his 2009 suit, he has presented no basis to conclude that dismissal of his Amended Complaint is not warranted based on claim preclusion. Correctional Plans, annual reviews, and actions of PDOC personnel that post date Plaintiff's 2009 action do not give rise to new claims for preclusion purposes because the requirements reviewed or imposed

22

are the same as those in place before Plaintiff filed the earlier action and all relate to parole review considerations. As set out above, the program assignments were recommended in 2007 and the link between completing additional programming and being paroled was specifically set out in the Board of Probation and Parole's April 9, 2008, Notice of Board Decision denying parole. Cognizant of the "deep-rooted historic tradition that everyone should have his own day in court," *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996) (internal quotation and citation omitted), Plaintiff has had his day in court. He has presented no evidence that anything about his program assignments, parole eligibility, or violent offender designation has changed since the 2008 parole denial and litigation of his 2009 case. Therefore, Plaintiff is not entitled to another day in court to present claims that could have been presented in his earlier action.

As noted previously, *see supra* n.3, Defendants Wetzel, Varner, Josefowicz, Keller, and Blasko or their predecessors were not named as defendants in the 2009 action. To the extent any of these Defendants allegedly have had something to do with Plaintiff's program assignments or parole eligibility, our claim preclusion determination bars suit against them. To the extent Plaintiff's claims against them may relate to other matters, those matters are not properly raised in the Amended Complaint pursuant to Court Order of November 5, 2012. (*See* Doc. 37.) With these findings,

all claims contained in Plaintiff's Amended Complaint are properly dismissed with prejudice.[6]

Although consideration of Plaintiff's additional objections is not warranted based on our preclusion determination, we will briefly address them in an abundance of caution.

## 2. **Official Capacity Suits**

Plaintiff maintains the Magistrate Judge erred in concluding his claims against Defendants in their official capacities must be dismissed. (Doc. 57 at 9 (citing Doc. 56 at 14).) The basis of Plaintiff's argument is that his claims for prospective injunctive relief are not barred by the Eleventh Amendment and sovereign immunity. (*Id.* at 9-10.)

As recently reiterated by our Circuit Court, [t]he Eleventh Amendment renders 'an unconsenting State . . . immune from liability for damages in a suit brought in federal court by one of its own citizens." *Smith v. Sec'y of Dep't of Environmental Protection*, No. 13-1569, 2013 WL 5071305, at *1 (3d Cir. Sept. 16, 2013) (not precedential). *Smith* further explained that "[s]tate sovereign immunity extends to subsidiary units and individual state employees sued in their official capacity. *See Betts* [*v. New*

---

[6] Defendants also argue that issue preclusion applies in this case. (Doc. 43 at 13-16.) While issue preclusion may apply and it may be that the program assignment and parole eligibility issues were essential to the previous judgment (Doc. 56 at 13), Defendants do not fully develop this argument as to these specific issues so we will not further discuss the application of issue preclusion to this case.

*Castle Youth Development Center*], 621 F.3d [249,] 254 [(3d Cir. 2010)]. The Eleventh Amendment does, however, permit suits for prospective injunctive relief against state officials. *Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908)." 2013 WL 5071305, at *1.

The relevant legal framework indicates Plaintiff is correct that claims for prospective injunctive relief are not barred under the Eleventh Amendment. However, based upon our determination that *all* of the claims contained in Plaintiff's Amended Complaint must be dismissed on other grounds, a review of what prospective relief Plaintiff may be seeking is not warranted.

## 3. **Ex Post Facto Clause**

Plaintiff next asserts that Magistrate Judge Carlson's findings regarding his Ex Post Fact Clause claim do not apply for several reasons. (Doc. 57 at 10-13.) We conclude Plaintiff's objection is without merit.

Analysis of a claimed Ex Post Facto Clause violation requires a two-prong inquiry: "'(1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change.'" *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010) (quoting *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005)). To satisfy the second prong

> a prisoner could, for example "compare the
> parole rates for prisoners with similar

> convictions before and after the [statute
> adoption], state whether the Parole
> Guidelines would indicate that the
> [plaintiff] was a good parole candidate, or
> draw inferences from the statement of reasons
> provided by the Parole Board regarding the
> criteria used."

*Farmer*, 448 F. App'x at 180 (quoting *Richardson*, 423 F.3d at 293).

Here, Plaintiff seems to point to the possible application of 42 Pa. C.S. § 9718.1, enacted in 2000, as the basis for his Ex Post Facto Clause claim. (Doc. 38 at 6, 12-15; Doc. 57 at 13-14.) This was the same statute relied upon by the plaintiff in *Newman* where the Third Circuit Court explained that

> potential prejudice arises from the
> retroactive application of § 9718.1 in
> conjunction with the prisoner's admission of
> guilt requirement. Standing alone, § 9718.1
> merely requires that convicted sexual
> offenders attend an SOP in order to be
> eligible for parole. It presents no
> potential prejudice of a constitutional
> magnitude. The statute can present a
> potential for disadvantage, however, if it is
> applied with the admission of guilt
> requirement, which carries the specter of
> collateral consequences.

*Newman*, 617 F.3d at 784.

If we assume arguendo, as the Court did in *Newman*, "that the 'change in the law' brought about by § 9718.1 was 'given retrospective effect,'" here the first prong of the inquiry would be met. Turning to the second prong, Plaintiff points to various data in support of his claim. (Doc. 38 at 13-15; Doc. 57 at 13-14.) His assertion that his Parole Guidelines Score recommended

parole at approximately the same time as he became eligible
(eligibility date of June 16, 1995) does not support a second-prong
finding in his favor because whatever the score was at that time,
Plaintiff was denied parole in 1995 and 1996, *Farmer*, 448 F. App'x
at 179--well before the 2000 enactment of § 9718.1.  Other
statistical evidence recited does not indicate any correlation to
convicted sex offenders.  (*See* Doc. 38 at 14-15.)  Thus, it does
not pertain directly to similarly situated inmates, a factor
considered in the second prong of the ex post facto inquiry.
*Farmer*, 448 F. App'x at 180; *Newman*, 617 F.3d at 786.  Additional
exhibits cited do not present the statistical support required.
(Doc. 38 at 14-15 (citing Amended Complaint Exs. 12, 19 Doc. 38 at
31, 38).)

The Third Circuit found that because Farmer had been denied
parole before and after the 1996 parole amendments at issue were
enacted, he "is hard pressed to show that he would be a
particularly strong candidate for parole" under the previous rules.
448 F. App'x at 180.  This observation applies with equal force
here where, as noted above, Plaintiff was eligible for parole and
was denied parole long before the passage of § 9718.1.

Because Plaintiff has failed to satisfy the second prong of
the ex post facto inquiry, his claim fails on its merits.

**4.  Due Process Clause**

Finally, Plaintiff objects to Magistrate Judge Carlson's

27

conclusion that his Due Process Clause claim should be dismissed. (Doc. 57 at 13-14.)   We conclude this objection is without merit.

Plaintiff cites *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010), and *Crosby v. Piazza*, 465 F. App'x 168 (3d Cir. 2012), in support of his due process claim.   (Doc. 57 at 13-14.)    These cases are easily distinguishable.   In *Renchenski*, the Third Circuit Court of Appeals concluded that an inmate *who had not been convicted of a sexual crime* was entitled to procedural due process before sex offender conditions could be imposed upon him.   622 F.3d at 326.   Here there is no doubt that Plaintiff has been convicted of a sexual offense.   In *Crosby*, the plaintiff claimed that he was required to complete several treatment programs in *retaliation* for filing the civil action.   465 F. App's at 173.   Here there is no retaliation claim at issue.

Because Plaintiff has presented no basis to conclude his due process rights have been violated, this claim is properly dismissed on the merits.

### III. Conclusion

For the reasons discussed above, we adopt Magistrate Judge Carlson's Report and Recommendation (Doc. 56) as modified. Defendants' Motion to Dismiss Amended Complaint (Doc. 42) is granted.   All claims in Plaintiff's Amended Complaint (Doc. 38) are dismissed with prejudice.   Based on the analysis contained in the body of this Memorandum and the fact that Plaintiff has been

28

previously granted leave to amend, we conclude allowing further amendment would be inequitable and futile. An appropriate Order is filed simultaneously with this Memorandum.

RICHARD P. CONABOY
United States District Judge

DATED: 9/17/13